# Ng Brothers Construction, Inc. *vs.* John Cranney & others.[1]

Middlesex. February 6, 2002. - April 30, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Construction contract. *Mechanic's Lien. Lien. Practice, Civil,* Summary judgment.

This court concluded that the filing or recording of a notice of substantial completion was not a prerequisite to the filing or recording of a notice of contract or a statement of account, and that a contractor could, without filing or recording a notice of substantial completion, perfect a mechanic's lien under G. L. c. 254. [641-643]

In an action brought against homeowners by a contractor seeking to enforce its mechanic's lien, in which the contractor contended that the mechanic's lien was properly perfected because it had timely complied with the pertinent provisions of G. L. c. 254, §§ 2 and 8, the judge correctly allowed the homeowners' motion for summary judgment, where the homeowners presented documentary evidence indicating that neither the contractor nor its subcontractors had provided labor or materials after the relevant date calculated pursuant to §§ 2 and 8, and where the contractor's bare assertion in its affidavits to the contrary raised no genuine issue of material fact. [643-649]

CIVIL ACTION commenced in the Superior Court Department on August 30, 1999.

Motions for summary judgment were heard by *Hiller B. Zobel*, J., and entry of a separate and final judgment was ordered by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert B. Carpenter* (*Peter S. Brooks* with him) for the plaintiff.

*Edward J. Fallman* for the defendants.

*Joel Lewin & Andrew W. Daniels* for Associated General Contractors of Massachusetts, amicus curiae, submitted a brief.

---

[1]Naomi Cranney and Nevena Cranney.

COWIN, J. The plaintiff, Ng Brothers Construction, Inc. (plaintiff), filed a complaint in the Superior Court, seeking in Count III to enforce its mechanic's lien rights against the defendants, John Cranney, Naomi Cranney, and Nevena Cranney.[2] Each party moved for summary judgment on Count III. A judge in the Superior Court allowed the defendants' motion, denied the plaintiff's cross motion and then entered a separate and final judgment for the defendants on Count III, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The plaintiff appeals from the entry of final judgment on Count III of its complaint. The Superior Court judge concluded that the plaintiff had not perfected its lien rights because it did not file a notice of substantial completion, a document he concluded was a condition precedent to perfection under G. L. c. 254, § 2A, of the mechanic's lien statute. We granted the plaintiff's application for direct appellate review. We affirm the judgment for the defendants, but for reasons different from those of the Superior Court judge.

1. *Background.* We summarize undisputed material facts drawing on the Superior Court judge's memorandum on the cross motions for partial summary judgment. In March, 1997, the defendants and the plaintiff entered into a written contract for the renovation of the defendants' home. The plaintiff agreed to act as general contractor in connection with the renovation, with authority to subcontract various aspects of the work; the defendants agreed to pay the plaintiff a fixed fee of $880,000 on a payment schedule. Soon the plaintiff claimed that the defendants continuously breached the agreed-on payment terms and that they sought various modifications necessitating change orders and delays in the work schedule. In the fall of 1997, a dispute arose concerning the plaintiff's failure to include the framing costs of the project in the contract price. The defendants hired Robert Bross as the owners' representative to supervise and deal with the plaintiff and (among other duties) to maintain a daily log of its efforts.

In late October, the plaintiff stopped work because of the

---

[2]The complaint contained two other counts against the defendants, one for breach of contract and the other for unjust enrichment, neither of which was at issue in the summary judgment motion.

framing costs dispute. On November 14, 1997, it recorded a notice of contract against the property pursuant to G. L. c. 254, § 2.[3] After the defendants agreed to pay the additional lumber costs, the plaintiff resumed work on November 24, 1997. Nevertheless, on January 9, 1998, the plaintiff recorded a statement of account pursuant to G. L. c. 254, § 8.[4]

On January 26, 1998, the parties sought to settle some of their differences by agreeing to a partial release, and on January 29, the plaintiff filed a notice of dissolution of its lien pursuant

---

[3]General Laws c. 254, § 2, provides in part:

"A person entering into a written contract with the owner of any interest in real property . . . for the whole or part of the erection, alteration, repair or removal of a building, structure, or other improvement to real property, or for furnishing material or rental equipment, appliances, or tools therefor, shall have a lien upon such real property, land, building, structure or improvement owned by the party with whom or on behalf of whom the contract was entered into, as appears of record on the date when notice of said contract is filed or recorded . . . to secure the payment of all labor, including construction management and general contractor services, and material or rental equipment, appliances, or tools which shall be furnished by virtue of said contract. . . ."

[4]General Laws c. 254, § 8, states in part:

"Liens under sections two and four shall be dissolved unless the contractor, subcontractor, or some person claiming by, through or under them, not later than the earliest of: (i) ninety days after the filing or recording of the notice of substantial completion under section two A; (ii) one hundred and twenty days after the filing or recording of the notice of termination under section two B; or (iii) one hundred and twenty days after the last day a person, entitled to enforce a lien under section two or anyone claiming by, through or under him, performed or furnished labor or material or both labor and materials or furnished rental equipment, appliances or tools, file or record . . . a statement, giving a just and true account of the amount due or to become due him, with all just credits, a brief description of the property, and the names of the owners set forth in the notice of contract. . . . Nothing in this section shall prohibit the filing or recording of a statement under this section prior to the filing or recording of the notices under section two A or two B."

to G. L. c. 254, § 10.[5] Disagreements between the parties continued; on March 9, 1999, the plaintiff filed its second notice of contract, and on June 3, 1999, its second statement of account.

The plaintiff subsequently commenced this lawsuit against the defendants asserting, in Count III, its entitlement to the enforcement of a mechanic's lien under G. L. c. 254. The defendants moved for summary judgment on Count III arguing that the plaintiff's second notice of contract and statement of account were untimely filed. The plaintiff filed a cross motion for summary judgment contending that the mechanic's lien was properly perfected because it had timely complied with the pertinent provisions of G. L. c. 254, §§ 2 and 8. At issue was when the plaintiff had last performed or furnished labor or materials or both labor and materials. See G. L. c. 254, §§ 2 (iii), 8 (iii).

A Superior Court judge allowed the defendants' motion for summary judgment and denied the plaintiff's cross motion for summary judgment. Although neither party briefed or argued the issue, the judge concluded that the plaintiff failed to perfect its lien rights because it did not file a notice of substantial completion, a document the judge determined was a condition precedent to the filing of a notice of contract and statement of account, see G. L. c. 254, § 2A.[6] The plaintiff sought reconsideration for the opportunity to brief the issue. The motion for reconsideration was denied.

2. *Statutory framework and ruling of Superior Court judge.* The initial issue for decision is whether a notice of substantial completion is a condition precedent to the recording of a valid and enforceable notice of contract and statement of account,

---

[5]General Laws c. 254, § 10, provides: "The lien of any person may, so far as his interest is concerned, be dissolved by a notice signed by him, stating that his lien is dissolved, filed in the registry of deeds where the notice of the contract is filed under which contract the lien is claimed."

[6]General Laws c. 254, § 2A, states that on "substantial completion of any contract subject to the provisions of section two, the owner and contractor shall execute and file or record in the appropriate registry of deeds a notice of substantial completion," in accordance with a specified form that is signed by both the owner and the contractor. Substantial completion is reached when "that work under the written contract is sufficiently complete so that it can be occupied or utilized for its intended use."

and thus the perfection of a mechanic's lien under G. L. c. 254. We conclude that G. L. c. 254, the mechanic's lien statute, contains no such requirement.

The mechanic's lien statute provides "that a debt due to a person who performs labor or supplies material for the improvement of real estate by agreement or with the express or implied consent of the owner is secured by a mechanic's lien." *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 542 (1987). The statute provides "a comprehensive scheme which compels strict compliance in order to obtain relief." *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 752 (1989). Individual sections of the statute delineate time requirements for creating, maintaining, and enforcing a lien. See, e.g., G. L. c. 254, § 2 (filing or recording of a notice of contract by general contractor); § 8 (filing or recording of statement of account); § 11 (commencement of action to enforce lien). See *National Lumber Co.* v. *LeFrancois Constr. Corp.*, 430 Mass. 663, 668 (2000). "Although not every procedural mistake is fatal, *Valentine Lumber & Supply Co.* v. *Thibeault*, 336 Mass. 411, 413 (1957), failure to comply normally results in dissolution of the lien, see *Blount Bros.* v. *Lafayette Place Assocs.*, 399 Mass. 632 (1987), or in failure of the lien to attach, *Street Lumber Co.* v. *Sullivan*, 201 Mass. 484 (1909)." *Mullen Lumber Co.* v. *Lore*, *supra* at 752-753. See *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, *supra* at 543, and cases cited (statute "contains filing and notice requirements to protect the owner and others with an interest in the property").

General Laws c. 254, §§ 2 and 8, both provide that their respective notices must be filed no later than the earliest of three dates: (1) a set amount of time after the filing or recording of a notice of substantial completion under § 2A; (2) a set amount of time after the filing or recording of a notice of termination under § 2B; or (3) a set amount of time after the last day someone affiliated with the party seeking to enforce the lien performed or furnished labor or materials or both labor and materials.

Although G. L. c. 254, § 2A, provides that the owner and the contractor "shall" file a notice of substantial completion "[u]pon or after substantial completion of any contract subject

to the provisions of section two," the statute contains no requirement that such a filing under § 2A is a prerequisite to filing notices under §§ 2 and 8. In fact, the express wording of §§ 2 and 8 governing the timing of the respective notices is to the contrary. Both sections use the word "or" in stating the alternative deadlines for filing their respective notices. Thus, filing a notice under § 2A is only one of three possible options for calculating the deadline for filing a notice under the statute.

Further, the express language of G. L. c. 254, § 2, authorizes the filing of a notice of contract before a notice of substantial completion: a notice of contract may be filed any time after execution of the contract, "whether or not the date for performance stated in such written contract has passed and whether or not the work under such written contract has been performed." Moreover, imposing a requirement of filing a notice of substantial completion is also unworkable as a practical matter: it would force a contractor first to obtain the signature of the property owner (which the notice of substantial completion requires), thereby allowing a property owner to control the process by refusing to sign the notice. Accordingly, the filing or recording of a notice of substantial completion is not a prerequisite to the filing or recording of a notice of contract or a statement of account, and a contractor may, without filing or recording a notice of substantial completion, perfect a mechanic's lien under G. L. c. 254.

3. *Plaintiff's perfection of its mechanic's lien.* The parties' summary judgment motions turn on whether the plaintiff perfected its mechanic's lien within the time periods required by G. L. c. 254, §§ 2 and 8. Although we could remand the case for determination of this issue, the question is ripe for decision. The parties have fully briefed their respective positions and the record includes the materials in support of their respective summary judgment motions. We thus resolve the issue on the record before us. *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141-142 (1975); *School Comm. of Springfield* v. *Board of Educ.*, 366 Mass. 315, 350 (1974), cert. denied, 421 U.S. 947 (1995).

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judg-

ment as a matter of law. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 283 (1997); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991); *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). The facts in this case are disputed. Nevertheless, summary judgment is still available if the party with the burden of proof at trial (here the plaintiff) fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor. *White* v. *University of Mass. at Boston*, 410 Mass. 553, 557 (1991). "[A] trial would [then] be useless and the moving party is entitled to summary judgment." *Kourouvacilis* v. *General Motors Corp.*, supra at 715, quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 328 (1986). A mechanic's lien is a creation of statute and is perfected only by strict compliance with the statutory requirements. *East Coast Steel Erectors, Inc.* v. *Ciolfi*, 417 Mass. 602, 605 (1994). The statute is strictly construed against the party claiming the lien. *Mullen Lumber Co.* v. *Lore*, supra at 752. Here, the plaintiff would have the burden of proof at trial to demonstrate that its second lien was perfected properly pursuant to G. L. c. 254, §§ 2 and 8.

General Laws c. 254, § 2, provides three alternative dates for measuring the time for filing or recording the notice of contract:

> "[N]ot later than the earliest of: (i) sixty days after filing or recording of the notice of substantial completion . . . or (ii) ninety days after filing or recording of the notice of termination . . . or (iii) ninety days after such person or any person by, through or under him last performed or furnished labor or materials or both labor and materials."

General Laws c. 254, § 8, regarding the time for filing or recording a statement of account, provides in pertinent part:

> "Liens under sections two and four shall be dissolved unless the contractor, subcontractor, or some person claim-

ing by, through or under them, shall not later than the earliest of: (i) ninety days after the filing or recording of the notice of substantial completion under section two A; (ii) one hundred and twenty days after the filing or recording of the notice of termination under section two B; or (iii) one hundred and twenty days after the last day a person, entitled to enforce a lien under section two or anyone claiming by, through or under him, performed or furnished labor or material or both labor and materials . . . file or record . . . a statement, giving a just and true account of the amount due or to become due him."

The plaintiff's second notice of contract was recorded on March 9, 1999, and its second statement of account on June 3, 1999. Thus, pursuant to G. L. c. 254, §§ 2 and 8, it must have last performed services or supplied materials within ninety days preceding March 9, 1999, i.e., December 9, 1998, and within 120 days of June 3, 1999, i.e., February 3, 1999. If the plaintiff's last date of work were February 3, 1999, a fortiori, it was still on the job on December 9, 1998. Therefore, on these facts, if the plaintiff has satisfied the required time limits of § 8, it has ipso facto satisfied them for § 2. Thus, February 3, 1999, is the operative date for our purposes. The defendants have moved, with evidentiary support, for summary judgment, contending that neither the plaintiff nor any person by or through them was still performing work as of February 3, 1999. Thus, the defendants have shifted the burden to the plaintiff (the party with the burden of persuasion at trial). The plaintiff may not rest on conclusory allegations; it must present evidence that would warrant submission of its case to a jury, i.e., creating a factual dispute requiring jury resolution. Failing to do so, the moving party, the defendants, have demonstrated that there is no genuine issue of material fact, and that, accordingly, they are entitled to summary judgment.

The defendants submitted the following summary judgment materials as evidence that the plaintiff last worked on the project on July 18, 1998, and that it was "off the project" by August 1998: (1) the plaintiff's own internal time records, payment records, and correspondence concerning the project; (2) the deposition testimony of the plaintiff's construction supervisor and of-

fice manager; and (3) a summary of the information in Robert Bross's (the defendants' representative on the project) daily labor journal.

The plaintiff's internal time cards are weekly records of the time it worked on the project. The last time card was for the week of July 18, 1998, and it states that Jack Ng worked a total of four hours at the defendants' residence that week. The plaintiff's payment records indicate that the last payment made to its subcontractors on the defendants' project was November 20, 1998, and the last payment to its day laborers was September 11, 1998. The plaintiff's business correspondence, written contemporaneously with the project, states that the plaintiff was off the project as of August, 1998.[7] Both the plaintiff's construction supervisor and its office manager testified at their respective depositions that the week ending July 18, 1998, was the last week the plaintiff worked on the project. Bross's daily labor journal for the defendants' project, which covered the time period October 3, 1997, through February 19, 1999, recorded the days when the plaintiff and the subcontractors appeared on-site. The journal indicates that the last date any representative of the plaintiff appeared onsite was November 10, 1998, when Jack Ng stopped by the house for fifteen minutes to retrieve some tools.

In response to the defendants' summary judgment motion, the plaintiff filed affidavits from its construction supervisor, office manager, and two subcontractors it retained to provide plumbing and electrical services in connection with the defendants'

---

[7]The summary judgment record includes three such letters from the plaintiff. In response to an invoice from Hatch Cabinet Designs, the plaintiff transmitted the following facsimile message on September 9, 1998: "Jack Cranney took over the rest of job. He is the one responsible to pay. Nothing to do with the plaintiffs." In a facsimile cover letter dated September 14, 1998, to Paul Santos of the Asian American Bank, the plaintiff's office manager states that, "we really don't know how many supply companies [and] subcontractors will ask for money after Jack Cranney took over everything on [August 6, 1998]." Finally, a letter dated November 13, 1998, from the plaintiff to Paul Santos provides, "I hope you can send a letter to Town of Belmont, stated [*sic*] clearly that as of August 6, 1998, Jack Cranney requested to take over the job from Ng Brothers Construction."

project.[8] The plaintiff claims that it continued to furnish its own labor and materials and to manage the subcontractors at least through March, 1999, and thus it timely filed a second notice of contract and statement of account.

In his affidavit, the plaintiff's construction supervisor states that he last remembers meeting employees of one of the subcontractors at the defendants' residence some time in March, 1999, and that he was there "as part of our management and coordination . . . of the Project." He further states that he continued to supervise the subcontractors' work from the plaintiff's office with the assistance of the office manager. The office manager avers that she supervised the project through March 10, 1999, and that the subcontractors worked under the plaintiff's supervision beyond the date on which the suit was filed (August 30, 1999). The plumbing subcontractor states in his affidavit that he last performed services at the project on February 27, 1999. The affidavit of the electrical subcontractor asserts that he was present at the defendants' residence on January 22, 1999, when an electrical inspection took place, and that he last visited the residence on March 10, 1999, when he attempted to install a chandelier. Both subcontractors aver that "[t]hroughout this entire period, [they] coordinated [their] work with Ng . . . as general contractor."

Although both subcontractors claim that they still considered themselves "on [the] job" because they have never received written cancellation from the defendants, neither subcontractor stated that any representative of the plaintiff supervised their work or was present at the site, or that services performed in connection with the subcontract were supervised by the plaintiff.[9] To the extent that these affidavits submitted by the plaintiff were intended to contradict the earlier deposition testimony of the plaintiff's construction supervisor and office manager that its

[8]Both subcontractors continued to work for the Cranneys after August, 1998, to provide additional plumbing and electrical services beyond the scope of their subcontracts with the plaintiff.

[9]The plaintiff claims that the defendants may not raise this issue on appeal because they failed to argue it below. See *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 296-297 (1996). The defendants' memorandum in support of their motion for summary judgment sufficiently set forth their contention on this issue.

last work on the project was the week ending July 18, 1998, the nonmoving party cannot create a material issue of fact and defeat summary judgment simply by submitting affidavits that contradict its previously sworn statements. *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 207 (1995); *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993). Nor did the plaintiff submit business records or other documents to support its position.

By contrast, documentary evidence presented by the defendants (the plaintiff's internal time records, payment records, and related correspondence for the project) indicate that neither the plaintiff, nor its subcontractors, was providing labor or materials after February 3, 1999. The bare assertion to the contrary in the plaintiff's affidavits raises no genuine issue of material fact. See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 559 (1976).

The plaintiff's submissions contain only conclusory allegations. They fail to define the scope of the services provided, the exact dates on which the plaintiff provided the labor, and the nature of the alleged supervision it performed during the relevant period. If the plaintiff had specific facts relating to its supervision of the project during the period in question, it did not present them to the motion judge. See *id.* An adverse party may not manufacture disputes by conclusory factual assertions; such attempts to establish issues of fact are not sufficient to defeat summary judgment.

The plaintiff's additional arguments are likewise without merit. It argues that the defendants offer no proof that the subcontractors were working for the defendants and not for the plaintiff during the lien perfection period. In view of the evidence submitted by the defendants, the burden is on the plaintiff to present "specific facts which establish that there is a genuine, triable issue, or summary judgment . . . will be entered against [it]." *Community Nat'l Bank* v. *Dawes, supra* at 554. The plaintiff cannot defeat summary judgment by claiming that the defendants have not presented evidence sufficient to warrant summary judgment; rather, the plaintiff must provide concrete evidence that supports a contrary determination.

The plaintiff further maintains that the issue whether its construction supervisor was on site in March, 1999, is "ir-

relevant" to the validity of the lien because a general contractor is not required to provide on-site supervision of a licensed subcontractor's work to qualify for lien protection under G. L. c. 254. But the plaintiff has not shown evidence of any off-site supervision of the project either. It also defends its failure to present evidence of written subcontracts, time cards, or payment records to subcontractors for the relevant time period by asserting that these documents are not required. The fact that these materials are not required does not relieve the plaintiff of its obligation to provide affirmative evidence that work was performed by or through it within the time period in question.

The plaintiff contends that Bross's journal may not be considered to refute the testimony of the subcontractors because it does not relate to any time beyond February 19, 1999. It claims that, because it was working at the site after February 19, 1999, the journal is of no evidentiary significance. The plaintiff again misconceives the burden here. It is the plaintiff that must prove it was supervising the project until at least February 3, 1999. Absence of evidence to the contrary does not constitute evidence that the plaintiff was doing so. Finally, the plaintiff asserts that, even if the subcontractors' work were minor, this does not undermine the mechanic's lien. However, we have found no evidence that the subcontractors performed even minor work for the plaintiff during the time period in issue.

4. *Conclusion.* Accordingly, based on the summary judgment materials before us, the plaintiff has not presented sufficient evidence to defeat the defendants' motion for summary judgment on Count III. We affirm the judgment for the defendants.

*So ordered.*